Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 226 & 02 C 1023 | **DATE** | 3/10/2003 |
| **CASE TITLE** | John A. Rhodes, Sr. vs. Murray's Discount Auto Stores | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Summary judgment is granted in the Defendant Murray's Discount Auto Stores favor. Both cases are hereby terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 1 2 2003 | |
| | Notified counsel by telephone. | | date docketed | 13 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 03 MAR 11 PM 1:44 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| JOHN A. RHODES, SR. | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | No. 02 C 0226 |
| | ) | No. 02 C 1023 |
| v. | ) | |
| | ) | MAR 1 2 2003 |
| MURRAY'S DISCOUNT AUTO STORES | ) | Judge Ronald A. Guzman |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is defendant Murray's Discount Auto Stores' ("defendant" or "Murray's") motion for summary judgment against plaintiff John Rhodes' ("plaintiff" or "Rhodes") complaint brought under Title VII of the Civil Rights Act of 1964, *42 U.S.C.* § 2000(e), *et. seq.* ("Title VII"), alleging discrimination based on his religion. For the following reasons, the defendant's motion for summary judgment is granted.

## BACKGROUND FACTS

Murray's is a retail discount auto store chain, headquartered in Belleville, Michigan. (*Def. Facts* ¶ 1) Murray's has 92 locations in the Midwest, and 32 locations in the Chicago metropolitan area. (*Id.* ¶ 2) The stores are open seven days a week, and are open from 9:00a.m. until 6:00p.m. on Sundays. The chain experiences its highest sales volume on Friday, Saturday, Sunday and Monday. (*Id.* ¶ 3) Each store is staffed with a Store Manager, an Assistant Store Manager, and a Sales Manager, all of whom are "key carrying" employees, responsible for

1

opening and closing the store, monitoring daily operations, supervising staff, ensuring quality customer service, scheduling and monitoring proper staffing, directing store personnel in any emergencies, setting and disabling the store's alarm system, and opening and closing the store's safe. (*Id.* ¶ 9) Each store's management team reports to a District Manager, who in turn reports to a Regional Manager. (*Id.* ¶¶ 4-6) Key carrying managers normally arrive an hour before the store opens, and also often stay later than other employees in order to prepare for the next day's business. (*Id.* ¶¶ 10-11)

Murray's has an established policy that all key carrying managers must be available to work "any time, without restrictions." (*Id.* ¶ 13) Because Friday, Saturday, Sunday and Monday are Murray's busiest days, it is Murray's policy that either the Store Manager or Assistant Store Manager open or close on these days. (*Id.* ¶ 15) Managers are also required to cover for one another during vacations and other necessary absences, and must work increased hours or longer shifts if necessary in order to do so. (*Id.* ¶¶ 16-17) If either the Assistant Manager or Store Manager will not work on Sundays, the other must work alone each Sunday from 8:00 a.m. until approximately 7:00 p.m. (*Id.* ¶ 17)

Murray's hired the plaintiff on April 10, 1995 as a Parts Clerk as part of the Hot Shots training program, at the Evergreen/Grand River store in Detroit, Michigan. (*Id.* ¶ 18) On his employment application, the plaintiff indicated that he was available to work from 9:00 a.m. to 9:00 p.m. Monday through Friday, from 9:00 a.m. to 6:00 p.m. on Saturdays, and from 2:00 p.m. to 5:00 p.m. on Sundays. (*Id.* ¶ 19) Plaintiff's initial responsibilities included waiting on customers, looking up various car applications, operating the cash register, and stocking. (*Id.* ¶ 21) In 1995, the Vice President of Operations for Murray's, Jerry Rosenfeld, selected the plaintiff for Murray's Management Training Program. (*Id.* ¶ 22) During the summer of 1995,

2

the plaintiff received training in the "Fast Trackers Program" at Murray's corporate headquarters, where he received training in money handling, loss prevention, identifying potential thefts, security measures, and inventory. (*Id.* ¶ 24) In February 1996, the plaintiff was relocated to the Chicago area as a Management Trainee, and was assigned to assist in establishing a new Murray's store on 92nd and Western in Chicago. (*Id.* ¶ 25) In the spring of 1996, the plaintiff was transferred to the Berwyn store to set up for its initial opening. (*Id.* ¶ 26) Several months later, the plaintiff was transferred to Murray's Broadway and Foster store to assist in setting up the store for its opening. (*Id.* ¶ 27) Once that store opened, the plaintiff served as the Assistant Store Manager for a few months, until he was assigned to the position of Sales Manager (for the same amount of pay) for the recently opened North Avenue and Cicero store. (*Id.* ¶¶ 28-30)

In late 1996 (or early 1997), the plaintiff was transferred to the Merrionette Park store to work as a Sales Manager and to assist in preparing the store for its initial opening. (*Id.* ¶ 32) Because the plaintiff did not work on Sundays, the Merionette Park Store Manager, Chris Cygan, or the Assistant Store Manager, C. Bruce Jones, had to work every Sunday. (*Id.* ¶ 33) As of February 1997, the plaintiff had worked fewer than five Sundays since transferring to Illinois in February of 1996 (*Id.* ¶ 33), and in February 1997, he informed Murray's that he could no longer work on any Sundays due to his religious conviction and his new role as an apostolic pastor. (*Id.* ¶ 34). Plaintiff explained to Murray's that his religion does not prohibit him from working on Sundays, but that he chooses not to work on Sundays as his way of honoring God. (*Id.* ¶ 35) Murray's determined that the plaintiff could not continue to work as a Sales Manager because he was not available to work anytime, as required with its policy for managers. (*Id.* ¶ 36) Murray's offered the plaintiff the opportunity to either remain in his position if he worked Sundays, or to

be transferred to a non-key carrying position. (*Id.*) The plaintiff refused to work Sundays, so Murray's transferred him to the Harvey Store to a Counter Manager position beginning on March 17, 1997, and then to a Parts Manager position beginning on June 2, 1997. (*Id.* ¶ 37) These positions were non-key carrying positions, but Murray's maintained the plaintiff's Manager salary despite his reduced responsibilities. (*Id.* ¶ 37) In July of 1997, a Sales Manager position became available in the Harvey Store, and Murray's decided to promote the plaintiff to this position and accommodate his need for Sundays off. (*Id.* ¶ 38)

In late 1997, Murray's assigned plaintiff to be a Sales Manager of the Glen Ellyn store, which was the closest Murray's location to the plaintiff's home at the time, and where he remained for more than a year. (*Id.* ¶ 39) From late 1997 until 2002, the plaintiff was transferred several times to four different Chicago area stores, maintaining his position at Sales Manager at each location. (*Id.* ¶¶ 40-44) Plaintiff received a pay raise in 1997, increasing his salary from $500 to $550 per week, which was the top of the pay scale for Sales Managers. (*Id.* ¶ 45) In May 2002, the plaintiff received a pay raise from $550 per week to $575 per week. (*Id.* ¶ 47)

Plaintiff alleges that he spoke with his District Manager, Mike Piercynski, on several occasions asking for promotion opportunities, and Piercynski told the plaintiff that his inability to work Sundays would hinder his ability to be promoted. (*Id.* ¶¶ 49-50, 53) Plaintiff also his District Managers about a pay raise, and they told him that he was already one of the highest paid Sales Managers and was at the top of the pay scale. (*Id.* ¶¶ 52-53) Plaintiff alleges that another of Murray's employee, Luis Caraballo, was promoted despite the fact that his religion prohibited him from working Friday night through Saturday or Sunday. (*Id.* ¶ 54) Plaintiff also compared himself to other Murray's employees, such as Chris McCoy, Ed Reyes and Jeff Brown, who were managers who rarely worked on Sundays. However, as defendant points out,

4

these employees were *available* to work on Sundays. (*Id.* ¶ 58-62)

Plaintiff also alleges that Murray's harassed and retaliated against him due to his refusal to work on Sundays. (*Id.* ¶ 63-84) Plaintiff believed that his schedule was intentionally changed on July 25, 2001 to prevent him from attending a mandatory meeting for Sales Managers at the 111th and Michigan store, which was scheduled for 7:00 a.m. to 4:00-5:00 p.m. (and the plaintiff was scheduled to work from 12:00 p.m. until close). (*Id.* ¶¶ 66-67) Following this meeting, the Regional Sales Manager inspected the Plaintiff's store, and the District Manager informed the plaintiff that he was dissatisfied with the appearance with the store and the way it was being run. (*Id.* ¶¶ 70, 72) Based on this evaluation, the plaintiff and all other managers of the store were issued a written warning by the District Manager, and were placed on performance objective. (*Id.* ¶¶ 69-71) All employees of the store were required to forfeit their days off in order to bring the store up to speed. (*Id.* ¶ 73) The plaintiff also believed that the Assistant Store Manager, Malkia Cooper, criticized him and argued with him. (*Id.* ¶ 75) Cooper reported her criticisms to the Store Manager and District Manager, but no action was taken. (*Id.* ¶ 76)

Plaintiff also believed that his reassignment to Oak Park was retaliatory because it was further away from his home. (*Id.* ¶ 78) In 2000, he requested a stipend for increased travel expenses and was denied by District Manager Larry Granger. (*Id.* ¶ 85) Plaintiff does not know of any other Murray's employee that has received the type of travel stipend that he requested. (*Id.* ¶ 89)

Plaintiff never told anyone that he filed a charge of discrimination against Murray, and he does not know whether the managers at his store (Cooper, Brown, and Granger) knew of the discrimination charge. (*Id.* ¶¶ 81-82) Plaintiff never complained to Murray's human resources about the allegedly discriminatory conduct. (*Id.* ¶ 83) Murray's was served with plaintiff's

5

charge at its corporate headquarters in Belleville, Michigan, and Jeff Foutz was in charge of responding and making sure that no local or district managers were informed of the charge. (*Id.* ¶¶ 84-85)

Plaintiff filed two separate charges of discrimination with the EEOC, dated June 22, 2001 and January 2, 2002, alleging that Murray's violated Title VII and the Civil Rights Act of 1964 by failing to promote him due to his religion. Plaintiff in turn received notices of his right to sue on November 13, 2001 and January 31, 2002, respectively. Plaintiff timely filed his complaints with this Court on January 9, 2001 (02 C 0226) and on February 12, 2002 (02 C 1023).

## DISCUSSION

### A. Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter if law." *Fed.R.Civ.P. 56(c)*; *Cox v. Acme Health Serv., Inc.*, 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986); *Hedberg*, 47 F.3d at 931. If this burden is met by the movant, the non-movant must then set forth specific facts to show that there is a genuine issue for trial. *Fed.R.Civ.P.*

*56(e); Celotex*, 477 U.S. at 324. While affidavits, depositions and interrogatories are acceptable evidence for the non-movant to present, these are not the exclusive forms of evidence that can be used in responding to summary judgment. Wright, Miller & Kane, *Federal Practice and Procedure, Civil 3d*, § 2721. In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-movant. *Cuddington v. Northern Ind. Public Serv. Co.*, 33 F.3d 813, 815 (7th Cir. 1994). However, *Rule 56(c)* mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion: "there must be evidence on which they jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250.

### B. Northern District of Illinois Local Rules

When a motion for summary judgment is filed in the Northern District of Illinois, both parties must comply with Local Rule 56.1. *Dauzvardis v. Midwest Generation, L.L.C.*, 2002 WL 31017436, at *2 (N.D. Ill. Sept. 9, 2002). To comply, the moving party must file a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Local Rule 56.1(a)(3)*. Then, under Local Rule 56.1, non-moving parties must "admit or deny each factual statement proffered by the defendant in a summary judgment motion, and to designate with specificity and particularity those material facts believed to establish a genuine dispute for trial." *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules

7

governing summary judgment." *Dauzvardis*, 2002 WL 31017436, at *2, *quoting Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).

When a defendant files a motion for summary judgment in this district against a pro se plaintiff's complaint, as is the case here, under Local Rule 56.2, the plaintiff must be provided with a "plainly worded notice" explaining a summary judgment motion, local rules governing such motions, and the consequences if the plaintiff fails to respond to the motion. *Houston v. Sidley & Austin*, 185 F.3d 837, 838 (7th Cir. 1999). Defendant Murray's properly complied with 56.2 by serving and filing the required notice.

According to the Seventh Circuit, due to the harsh consequences of a summary judgment ruling, courts should be "solicitous of pro se plaintiffs" when assessing their compliance with procedural requirements and should be "wary of terminating legitimate lawsuits merely because of unskilled presentations." *Kincaid v. Vail*, 969 F.2d 594, 598-99 (7th Cir. 1992). "The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, if his pleading is otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). However, pro se litigations must nevertheless support and develop their arguments with legal authority, as all plaintiffs do. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). This requirement is especially essential in "extremely fact-intensive" cases such as employment discrimination cases. *Greer*, 267 F.3d at 727. Thus, courts are not "obliged in our adversary system to scour the record looking for factual disputes," *id., quoting Waldridge v. American Hoechst Corp.*, 24 F.3d 819, 921-22 (7th Cir. 1993), and perfunctory, undeveloped, and unsupported arguments are deemed waived. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th. Cir. 2000), *cert. denied* 520 U.S. 1277, 120 S.Ct. 2746 (2000).

Keeping these principles in mind, we now turn to the Plaintiff's response. Rhodes filed a Rule 56.1 Statement of Response in Support of Denial of Motion for Summary Judgment on October 16, 2002. In order to comply with 56.1's requirements, the non-movant must file a "response to each number paragraph in the moving party's statement, including, in case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied on." *Local Rule 56.1(b)(3)*. Plaintiff, however, only mentions twenty-seven of the defendant's 91 items (specifically, items 1-17, 19-20, 28-30, 40-42, 44 and 48). For the items he does address, plaintiff fails to cite specific references to the materials relied upon. The court has to agree with the defendant that the response primarily consists of legal conclusions, instead of particularized statements of fact. While this Court has the discretion to grant the Defendant's motion for summary judgment on this basis alone, *Greer*, 267 F.3d at 727, it nonetheless chooses not to exercise such discretion in this case, and, thus, turns to the substantial arguments of the parties.

## C. Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(1)*. Religion includes "all aspects of religious observance and practice, as well as belief." *42 U.S.C. § 2000e(j)*. To establish a prima facie case of religious discrimination, a plaintiff must show that (1) he has a sincere religious belief, observance or practice which conflicts with an employment requirement; (2) he informed his employer of the conflict; and (3) the religious practice was the basis for an adverse

9

employment decision. *See E.E.O.C. v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996); *Wright v. Runyon*, 2 F.3d 215, 216 n.4 (7th Cir. 1993). Once a plaintiff makes a prima facie case, the statute imposes "an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.2d 1569, 1574-75 (7th Cir. 1997), *citing Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 n.1, 107 S.Ct. 367 (1986). The employer need not select the employee's proposal of reasonable accommodation; any reasonable accommodation by the employer is sufficient to comply with the statute. *See Anonia Bd. of Educ.*, 479 U.S. at 69.

Plaintiff argues that there is direct evidence that his religious practice, which caused him to refuse to work on Sundays, was the basis for the Defendant's decision not to promote him to either a Store Manager or Assistant Store Manager position. He further argues that a promotion with an exemption from working Sundays would not pose an undue hardship to the Defendant, and that the defendant would suffer no economic loss as a result of such an arrangement. In support of this contention, he points to two specific days, August 16, 2002 and October 7, 2002, which were profitable despite the fact that no managers were on duty. *Pl. Response* at 6. However, Plaintiff failed to refute the Defendant's argument that because Managers are the only "key carrying" employees, it is its policy that at least one such employee needs to be on duty at all times. Thus, if the Plaintiff were exempt from working Sundays, the other manager of his store would be forced to work every Sunday, thus imposing an undue hardship on Murray's other employees. Even taking these facts and inferences in the light most favorable to the Plaintiff, this Court concludes no direct evidence was offered by the Plaintiff with regard to his failure to promote claim to create a genuine issue of material fact for trial.

Title VII's prohibition against discrimination against an individual also extends to workplace harassment attributable to the plaintiff's religion. *See Venters v. City of Delphi*, 123 F.3d 956, 974-75 (7th Cir. 1997), *citing Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399 (1986). To prevail on a hostile environment harassment claim, a plaintiff must show that his work environment was both subjectively and objectively hostile. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 774, 787, 118 S.Ct. 2275 (1998); *see also Venters*, 123 F.3d at 975. An objectively hostile environment is one that a reasonable person would find hostile or abusive, *see Harris v. Forklift Systems*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993), and the objective standard requires the court to consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367.

Plaintiff's claim for religious harassment is mainly based his reassignment to the Oak Forest store (because it was further from his home), and a refusal by the Defendant to grant him a travel stipend. However, under Title VII, the harassment is prohibited only if it is "because of" a plaintiff's religious belief. *Oncale*, 523 U.S. at 80-1, 118 S.Ct. 998. While the Plaintiff may have perceived that his reassignment was directly due to his religion, he offers no facts in support of that perception. Likewise, Plaintiff fails to offer any facts in support of his claim that the Defendant's ordering of days in its scheduling was "because of" his religion. Further, if conduct is not "severe and pervasive" enough for a reasonable person to find it abusive or hostile, it is beyond the purview of Title VII. *Harris*, 510 U.S. at 21, *citing Meritor*, 477 U.S. at 57. It is highly unlikely that a reasonable person would find a routine reassignment (where the

person reassigned maintained his position and pay), or the ordering of days on a scheduling sheet to be "severe or pervasive" enough to meet the objective standard, and Plaintiff offers no facts to support such a contention. Thus, this Court finds that no genuine issues of material fact exist regarding the Plaintiff's harassment and retaliation claims.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in the Defendant's favor. Both cases are hereby terminated. This is a final and appealable order.

**SO ORDERED**  ENTERED: 3-10-03

*Ronald A. Guzman*

HON. RONALD A. GUZMÁN
United States Judge

12